# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2095 | **DATE** | September 17, 2001 |
| **CASE TITLE** | Chambers v. The Habitat Co., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss the plaintiff's second amended complaint [45-1] is granted. The plaintiff's motion to strike [58-1] is denied as moot, inasmuch as we did not rely on the Rooker-Feldman doctrine to dismiss her due process claims for money damages. We grant the plaintiff's request for leave to file a third amended complaint, which she may do by October 20, 2001. This will be her final opportunity to amend her complaint. The defendant may have thirty days after service to plead to the third amended complaint. See attached for details. ENTER MEMORANDUM OPINION.

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | **Document Number** | |
| X | Notices mailed by judge's staff. | SEP 18 2001 | | |
| | Notified counsel by telephone. | date docketed | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to _____ | docketing deputy initials | | |
| KAM | courtroom deputy's initials | 9/17/01 date mailed notice | | |

FILED FOR DOCKETING
01 SEP 17 PM 5: 13

Date/time received in central Clerk's Office

KAM

mailing deputy initials

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| SANDRA ANN CHAMBERS, individually and on behalf of all others similarly situated in the past, present and future, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 99-C-2095 |
| | ) | |
| THE HABITAT COMPANY, LONG GROVE HOUSE, DANIEL E. LEVIN, SANFORD KAHN, LTD., ALECIA SMITH, AND LYNN MOSELY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |



DOCKETED
SEP 1 8 2001

### MEMORANDUM OPINION

Before the court are the defendants' motions to dismiss the plaintiff's second amended complaint, and the plaintiff's "Motion to Strike Pleadings in Defendant's Joint Motion to Dismiss." For the reasons explained below, the defendants' motion is granted, and the plaintiff's motion is denied.

### BACKGROUND

The facts of this case were described in an earlier opinion, and are as follows:

> Plaintiff, Sandra Ann Chambers ("Chambers"), is a resident of Illinois. Chambers rented an apartment in Long Grove House, a public housing complex in Chicago, Illinois, from its owner, Daniel Levin ("Levin"), and the Habitat Company ("Habitat"), a rental management company. Alecia Smith ("Smith") serves as Habitat's property manager, and Sanford Kahn, Ltd. ("Kahn") is Habitat's attorney. Lynn Mosley ("Mosley") works for

Habitat....

In 1995, Habitat initiated eviction proceedings against Chambers in Illinois state court. On November 15, 1996, the Circuit Court of Cook County granted summary judgment for Habitat. Chambers has exhausted her state appeals.... On March 25, 1999, the Circuit Court of Cook County entered an eviction order against Chambers allowing Habitat to evict Chambers on April 9, 1999. The state proceedings are complete.

On March 30, 1999, Chambers brought this suit, styled as a class action, against Habitat, Long Grove House, Levin, Kahn, Smith, and Mosley. She moved for a temporary restraining order to halt the eviction order issued by the Circuit Court of Cook County. We denied that motion on April 8, 1999. We subsequently dismissed her complaint and her petition to proceed in forma pauperis on April 14, 1999. Chambers ... amended her complaint....[S]he no longer has any motions pending in the underlying state action.

The amended complaint alleged violations of the plaintiff's civil rights, breach of rental agreement, violations of the Fair Debt Collection Practices Act (FDCPA), fraud and false statements, defamation, harassment, and malicious prosecution. On May 5, 1999, we dismissed Chambers' amended complaint sua sponte, stating that we lacked jurisdiction to review the state court judgement under the Rooker-Feldman doctrine. Citing a case decided just two months later, the Seventh Circuit held that Rooker-Feldman did not bar all of the plaintiffs claims, vacated our opinion, and remanded the case. Chambers v. The Habitat Co., No. 99-2460, 2000 WL 748117 (7th Cir. 2000) (citing Long v. Shorebank Development Corp., 182 F.3d 548 (7th Cir. 1999)).

The plaintiff then filed a second amended complaint

("complaint"), which dropped the claim for breach of rental agreement but retained the other claims mentioned above. The defendants have moved again to dismiss the complaint. Among other arguments, they assert that the federal claims should be dismissed because they are barred by the <u>Rooker-Feldman</u> doctrine, collateral estoppel, and the statute of limitations. The defendants also argue that this court should dismiss the state law claims for failure to state a claim.

Instead of filing a response to the defendants' motion, the plaintiff filed her own motion, styled as a "Motion to Strike Pleadings in Defendant's Joint Motion to Dismiss." The accompanying brief and the plaintiff's further "Surreply" argue the merits of the defendants' motion, and thus, we take them as a response and surreply to the defendants' motion.

## ANALYSIS

When analyzing a motion to dismiss we take as true the facts alleged in the complaint.

## I. Section 1983 Claim for Violation of Due Process Rights

The plaintiff argues that the defendants violated her rights to due process. She claims monetary damages for loss of personal property resulting from the eviction, emotional distress, loss of her rental subsidy, and the retroactive reimbursement of rental

subsidy she lost, among other things.

To establish a § 1983 due process violation the plaintiff
must show (1) that she was deprived of a constitutionally
protected property interest, (2) state action, and (3)
constitutionally inadequate process. Barnes v. Ramos, No. 94 C
7541, 1996 WL 599637, *2 (N.D.Ill. Oct. 11, 1996), aff'd, 2001 WL
87470 (7th Cir. January 30, 2001). The defendants argue that the
plaintiff fails to state a claim because all of the defendants
are private entities, and thus not subject to liability under
§ 1983[1]; the statute of limitations has run on her claims[2]; and
that her claims are barred by the Rooker-Feldman doctrine or

---

[1] The plaintiff alleges that defendant Long Grove House is a public
housing agency (PHA) that is privately owned. The defendant argues that Long
Grove House, as a privately owned entity, cannot be a PHA, and therefore, the
plaintiff has failed to show "state action" supporting a § 1983 due process
claim. However, federal regulations specifically contemplate that some PHA's
are privately owned. See 24 C.F.R. § 880.201 ("Private-Owner/PHA Project. A
project under this part which is owned by a private owner."). Therefore, the
plaintiff has not pled herself out of court simply by alleging that the Long
Grove House is privately owned. The question of Long Grove House's
relationship to the United States Department of Housing and Urban Development
(HUD) is one that may require discovery, and we decline to impose on the
plaintiff a duty to plead the specifics of the relationship.

[2]The defendants argue that the statute of limitations has run on
plaintiff's due process claims, all of which relate to the tenancy and
eviction from the Long Grove House. The judgment was entered in November of
1996 and she filed suit here in March of 1999. The plaintiff points out,
however, that the order to enforce the order of possession was not entered
until March of 1999. It is unclear whether Chambers' injuries occurred (and
her due process claims accrued) in November of 1996 when the order for
possession was entered against her or in 1999 when the order was actually
enforced. In Long, the Seventh Circuit stated in dicta that the plaintiff's
injuries "were complete only when the Circuit Court entered the eviction order
against her." 182 F.3d at 557. However, the Seventh Circuit has stated that
procedural due process claims for deprivations of property rights do not
accrue until the plaintiff is actually deprived of her property. See Lawshe
v. Simpson, 16 F.3d 1475, 1480 (7th Cir. 1994) (holding that a claim for
deprivation of public employment without due process accrues on the date
employment is actually terminated). Neither party has addressed this issue.

collateral estoppel.

The _Rooker-Feldman_ doctrine states that a federal court is precluded from exercising subject matter jurisdiction over claims that seek review of a state court judgment. _Maple Lanes, Inc. v. Messer_, 186 F.3d 823, 825 (7th Cir. 1999), _cert. denied_, 528 U.S. 1118 (2000). To assess the applicability of the _Rooker-Feldman_ doctrine, "the fundamental and appropriate question to ask is whether the injury alleged resulted from the state court judgment itself or is distinct from the judgment." _Id._; _Long_, 182 F.3d at 555. In _Long v. Shorebank Development Corp._, the plaintiff alleged that defendants violated her rights to due process in eviction proceedings they instituted against her, and she sought money damages for injuries she suffered as a result of the eviction. In particular, she alleged that the defendants filed an action to collect a rental debt they knew did not exist, used fraud to keep her from going to court to contest the baseless eviction, and knowingly misrepresented to the court that she did not dispute the eviction. 182 F.3d at 551. Noting that the plaintiff, Long, would not have been deprived of her property if the eviction had not occurred, the Court stated that "it does not seem that Long's due process argument can be considered separate from the eviction order entered against her." _Id._ at 556. Indeed, "a litigant may not attempt to circumvent the effect of _Rooker-Feldman_ and seek a reversal of a state court judgment

simply by casting the complaint in the form of a civil rights action." Id. at 557. However, the Court stated that Long's case was distinct from other cases where Rooker-Feldman was applied because she was precluded from raising in state court the claims that she was presenting in her federal suit. Id. at 557. Illinois law, the Court pointed out, prevents defendants from raising claims that are "not germane to the issue of possession," and counter-claims seeking money damages are not germane to possession. Id. at 559.

The Seventh Circuit relied on Long to vacate our earlier order and held that the Rooker-Feldman doctrine does not bar Chambers' claims for money damages under § 1983 for the alleged violation of her due process rights. The Court went on to instruct us to determine whether Chambers' claims for

> failure to comply with federal laws and regulations governing subsidized housing, and the alleged due process problems with adjudicating forcible entry and detainer claims via summary judgment ... raise issues that are sufficiently (not merely tangentially) related to issues of possession so as to be deemed "germane" under Illinois law to a forcible entry and detainer action.... If any of these claims raise issues that are germane to such actions, they most probably could have ben raised in the state court action and therefore would be "inextricably intertwined" with that judgment.

Chambers, 2000 WL 748117.

## A.  Failure to comply with federal regulations

Plaintiff claims the defendants failed to comply with circulars and/or handbooks issued by the United States Department

of Housing and Urban Development ("HUD") governing the lease, eviction notices, and eviction procedures. The plaintiff claims the lease was illegal in that it failed to describe grievance procedures; the lease and eviction notice failed to inform her of the right to examine documents concerning her eviction and to inform her that she was entitled to due process; the eviction notice misstated the amount of rent owing; the eviction was without good cause; and she was denied due process because the use of summary judgment deprived her of an opportunity to examine witnesses at a hearing.

There are four categories of claims that are germane to the issue of possession. See People ex. rel. Ill. Dept. of Transp. v. Walliser, 629 N.E. 2d 1189, 1194 (Ill. App. Ct. 1994). These include:

> (1) claims asserting a paramount right of possession;
> (2) claims denying the breach of the agreement vesting
> possession in the plaintiff; (3) claims challenging the
> validity or enforceability of the agreement on which
> the plaintiff bases the right to possession; or (4)
> claims questioning the plaintiff's motivation for
> bringing the action.

Id.

The plaintiff's claims that the defendants violated federal regulations are germane to the issue of possession. Noting that the Illinois statute allows defendants to "give in evidence any matter in defense of the [forcible entry and detainer] action," the Seventh Circuit observed that the statute "has been held to

allow equitable defenses such as civil rights violations."
Johnson v. Illinois Dept. of Public Aid, 467 F.2d 1269, 1273 (7th
Cir. 1972) (citing Rosewood Corp. v. Fisher, 46 Ill.2d 249
(1970), in which the defendant asserted due process and equal
protection claims); see also Marine Park Assoc. v. Johnson, 274
N.E.2d 645, 648 (Ill. App. Ct. 1971) (finding a civil rights
claim based on racial discrimination germane to issue of
possession). Further, noncompliance with HUD circulars applicable
to federally-funded local housing authorities is a defense in
Illinois eviction proceedings. Johnson, 467 F.2d at 1273 (citing
Chicago Housing Auth. v. Daughrity, 270 N.E.2d 613, 616 (Ill.
App. Ct. 1971); see also Walliser, 629 N.E.2d at 1196 (noting
that federal regulations could constitute a defense to eviction,
and would therefore be germane to the action, but concluding that
the federal regulations at issue did not apply to the defendant).
Because the plaintiff could have raised as a defense to the
eviction the defendants' violations of HUD regulations and
circulars regarding due process, we find these claims are barred
by the Rooker-Feldman doctrine.[3]

---

[3]Chambers argues that the Illinois Appellate Court considered irrelevant
to the issue of possession the question of whether Habitat was a public
housing authority. We disagree. In the course of addressing Chambers'
argument that Habitat was required to re-evaluate her income before the
Circuit Court ruled on Habitat's motion for use and occupancy, the appellate
court stated that "there is no evidence on record that persuades this court
that plaintiff's status as an agent of a Public Housing Authority, if true, is
relevant to the issue of use and occupancy." The Habitat Co. v. Chambers, No.
1-97-2330 (Ill. App. Ct. Aug. 4, 1998) at 12. This statement reflects an
insufficiency of evidence that specific rules apply to public housing
authorities on the issue of use and occupancy, as opposed to possession. The
two issues are distinct. For example, the order for use and occupancy was

**B.    Summary Judgment Claims**

The Seventh Circuit also instructed this court to determine whether <u>Rooker-Feldman</u> bars this court from considering Chambers' claim that the use of summary judgment motions unconstitutionally deprived her of the ability to present evidence and cross-examine witnesses.   The Illinois Appellate Court specifically discussed her argument "that her eligibility to receive federally subsidized rent created a right that entitled her to an evidentiary hearing prior to the termination of her benefits," and that the use of summary judgment deprived her of this right. <u>The Habitat Co. v. Chambers</u>, No. 1-97-2330 (Ill. App. Ct. Aug. 4, 1998) ("order"), at 13. It concluded: "Illinois courts have consistently held that motions for summary judgment are proper in forcible entry and detainer proceedings."   Order at 14.[4]

Therefore, not only could Chamber's have presented this argument in the state court, she in fact <u>did</u> present this argument in the state court.   This issue has been fully litigated, and we may not disturb the state court ruling under

---

entered in January of 1996, and it required the plaintiff to pay $546.00 per month pending a jury trial on the issue of possession.  The order of possession was entered in November of 1996.

[4] Although the defendants have not challenged this claim under Rule 12(b)(6), we think it is clear there can be no cause of action for utilization of summary judgment proceedings.  Summary judgment does not mean that the court will enter an order without examining evidence. As the Illinois appellate court noted, summary judgment is only appropriate "when the pleadings, depositions, and admissions on file, in addition to any affidavits presented, establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Order at 6.

the doctrine of collateral estoppel.  See <u>American Nat'l Bank &</u>
<u>Trust v. Regional Trans. Auth.</u>, 125 F.3d 420, 430 (7th Cir. 1997)
("Under Illinois law 'collateral estoppel means that when an
issue of ultimate fact has been previously determined by a valid
and final judgment, that issue cannot be relitigated between the
same parties.'").

### C.    Other Due Process Claims

The Appellate Court of Illinois issued an order which
discussed a number of the claims the plaintiff presents here.
These include Chambers' claims that (1) she paid the rent she
owed; (2) the defendants illegally evicted her pending a
recertification of her rent based on a change in her income[5]; (3)
the five-day notice she received incorrectly stated the amount of
rent she owed; and (4) summary judgment motions are improper in
forcible entry and detainer actions.  Because these were all
presented and litigated between the parties in state court, they
are barred by collateral estoppel.  See <u>American Nat'l Bank &</u>
<u>Trust</u>, 125 F.3d at 430.

Apart from the claims discussed, Chambers also argues that

---

[5] The plaintiff claims that her income decreased in 1995, and as a
beneficiary of a federally subsidized housing program, she was entitled to
have her rent reduced to reflect her lower income.  She claims that Smith
failed to recertify her income and recalculate her rent and that the
defendants illegally initiated eviction proceedings against her on the basis
of rent she owed prior to recertification.  The appellate court determined
that the record showed, however, that Chambers failed to meet the conditions
of recertification by failing to present documents verifying her income, and
she was not entitled to have eviction proceedings delayed indefinitely.  Order
at 10.

the eviction was illegal because the defendants violated the lease. The plaintiff states that according to her lease, tenants must receive more than five days notice that the tenancy will be terminated, and the landlord may evict only for good cause. The defendants, however, gave her only a five-day notice and they did not have good cause to evict her. These claims are clearly germane to the issue of possession, as they set forth a valid defense to eviction. See 735 ILCS 5/9-106 ("The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action."). These claims are inextricably intertwined with the forcible entry and detainer action, and are therefore, barred by Rooker-Feldman.

### D. Due Process Claims for Money Damages

The above sections discuss every claim Chambers raised in the "due process" section of her complaint. We have found, in sum, that each of these claims could have been raised as a defense or was in fact raised as a defense in the state court proceedings. As to the plaintiff's claims for money damages for these alleged due process violations, the Seventh Circuit has explicitly held that a litigant cannot avoid Rooker-Feldman simply by casting her complaint in the form of a federal civil rights violation and seeking money damages. See Maple Lanes, Inc. v. Messer, 186 F.2d at 825 (characterizing plaintiff's § 1983 claim seeking monetary damages for loss of property without due

process as an attempt "to mount an end-run around the adverse outcome in state court").

The language of the Court's order in this case, however, gives us pause. The Court stated that the <u>Rooker-Feldman</u> doctrine "does not bar Chambers' claims for money damages under ... § 1983 for the alleged violation of her due process rights." In an abundance of caution, we have reviewed the other sections of the complaint to determine whether plaintiff makes any further due process claims. In a section entitled "false statements," the plaintiff complains that defendants obtained judgment against her by making false representations to the court. The false statements identified by the plaintiff are (1) that one of Habitat's attorneys pled that Chambers' due process rights were not violated; (2) the defendants led the court to believe that Chambers was not entitled to the due process protections of federally-subsidized tenants; (3) defendant Mosley falsely told the court that the plaintiff had sent overdue rent in July 1995 to the wrong place. This resulted in the court allowing the defendant to return plaintiff's money and proceed with the eviction.[6] There are a number of problems with these claims. As

---

[6]The plaintiff also claims that defendant Smith misled the court into believing that the plaintiff owed more rent than she did. The appellate court noted that even if Chambers owed less than Smith stated, the notice of termination was still valid because Chambers had not paid the full rent she owed. Order at 11. Chambers also claims that Smith misled the court when she failed to indicate that Chambers' arrearage was due to defendant Mosely's failure to recertify Chambers' income. The appellate court rejected the argument that Mosely failed to recertify Chamber's income. <u>See infra</u> note 5.

to statement (1), this is a conclusion of law rather than a false statement of fact. See <u>United States v. Endo</u>, 635 F.2d 321, 323 (4th Cir. 1980) (noting a distinction between denying specific acts and denying a legal conclusion). It is therefore not actionable. As to statement (2), the opinion of the appellate court clearly acknowledged Chambers' status as a subsidized housing tenant, and indeed, specifically discussed her due process right to an evidentiary hearing as a tenant receiving rent subsidies. Therefore, it is clear that the plaintiff presented evidence on her status as a subsidized housing tenant, and litigated her claims about the consequent due process protections she should have been afforded. This issue was litigated between the parties, and it is barred by collateral estoppel.

As to statement (3), according to the complaint, the testimony of defendant Mosley was taken during the first eviction proceeding, which the defendants dismissed voluntarily. It was in the second proceeding that the defendants obtained summary judgment. Therefore, this alleged misstatement could not have deprived Chambers of any property. <u>Frost v. Dorsch</u>, 92 C 4025, 1992 WL 390743 at *1 (N.D.Ill. Dec. 18, 1992) (stating that a § 1983 claim must allege that defendants deprived the plaintiff of her rights under the Constitution). In addition, Chambers argued that she had a valid defense to the eviction on the basis

of having made the July 1995 payment, a claim that the appellate court rejected after reviewing the record. Order at 7-8. Because this issue was fully litigated in state court between the same parties, we conclude that it is barred by collateral estoppel. See American Nat'l Bank & Trust, 125 F.3d at 430.

Count I is dismissed. Chambers' claims that the defendants violated her lease and federal regulations were defenses she could have raised in the forcible entry and detainer action, and therefore, are barred by Rooker-Feldman. Chambers' other due process claims, including the claims for money damages, were litigated in state court and are barred by collateral estoppel.

## II. Fair Debt Collection Practices Act

The plaintiff alleges that the defendants violated the FDCPA in a number of ways. For example, the defendants illegally assessed attorney fees, penalty fees, interest, costs, and attempted to garnish wages. The defendants argue that only Sandford Kahn, Ltd. is a "debt collector" within the meaning of the FDCPA, and the claim against Kahn, Ltd. must be dismissed because it is barred by the statute of limitations.

The FDCPA prohibits debt collectors from engaging in a range of activities. A debt collector is:

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another....The term does not include -

> (A) any officer or employee of a creditor
> while, in the name of the creditor,
> collecting debts for such creditor.

15 U.S.C.A. § 1692a(6). Here, the only defendant alleged to have collected the debt of another is Kahn, Ltd., which is the law firm that prosecuted the forcible entry and detainer action against the plaintiff. The other defendants are the plaintiff's creditors or employees of her creditors. Count II, therefore, can be asserted only against Kahn, Ltd.

As to Kahn Ltd., the defendants argue that claims for violations of the FDCPA must be brought within one year of the alleged violation. See 15 U.S.C. § 1692k(d). Because the complaint only refers to conduct occurring in 1996 and before, defendants contend that this claim is barred.

We have reviewed the complaint and attached documents, including the plaintiff's affidavit. The only allegations about collection activities after 1996 are that some or all of the defendants continued to assess illegal attorney fees, and other illegal charges. The plaintiff submits with her complaint exhibit O, which is a collection of invoices that include charges for legal fees. The last invoice is from March of 1999. These invoices appear to come from the Habitat Company; there is no mention of Kahn, Ltd.

The plaintiff argues that Kahn, Ltd.'s continued involvement

in the enforcement of the order of possession lasted at least until March of 1999. The second amended complaint includes no such allegation. While it alludes to wage garnishment, it does not state whether Kahn, Ltd. was involved or whether the plaintiff's wages were in fact garnished. The plaintiff attaches to her motion a document which was filed by Kahn, Ltd. in the state court action requesting an extension of the period for enforcement of the judgment. See Plaintiff's Motion, Ex. 3.

Although we give the plaintiff the benefit of imagination, see Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), it is unclear how a request for an extension of time to enforce the judgment would violate the FDCPA. Perhaps the plaintiff means to assert that the actual enforcement of the judgment violated the FDCPA; however, the plaintiff provides no information about what Kahn, Ltd. did to enforce the judgment, much less how the enforcement actions were illegal.

Therefore, we dismiss Count II against all defendants both on the basis of limitations and for failure to state a claim.

## III. **Harassment**

In response to the defendant's argument that there is no Illinois cause of action for harassment, the plaintiff argues that her claim for harassment is actionable under § 1983 or the

FDCPA. Neither her complaint nor her briefs identify a § 1983 claim that is different from those already discussed and dismissed. See infra I. The brief and the complaint focus on the allegedly illegal billing practices of the defendants under the FDCPA. Because we have dismissed the FDCPA claim, see infra II, we also dismiss Count III, Chambers' claim for harassment.

## IV. Malicious Prosecution

To state a claim for malicious prosecution under Illinois law, the plaintiff must allege that (1) she was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury. Sneed v. Rybicki, 146 F.3d 478, 480-81 (7th Cir. 1998). Here, the plaintiff's claim fails because she does not allege that the eviction proceedings were terminated in her favor.

The plaintiff argues that there are two proceedings which terminated in her favor. One is a case to which she was not even a party; the other is a case which the defendants voluntarily dismissed. Because neither of these is an adjudication in favor of Chambers, we dismiss Count IV for failure to state a claim.

## V.  Fraud, Deceit, and False Statements

To establish fraud under Illinois law, the plaintiff must show that (1) the defendant made a false statement, (2) of material fact, (3) which the defendant knew or believed to be false, (4) with the intent to induce the plaintiff to act; (5) the plaintiff justifiably relied on the statement, and (6) the plaintiff suffered damage from such reliance. Houben v. Telular Corp., 231 F.3d 1066, 1074 (7th Cir. 2000).  Federal Rule of Civil Procedure 9(b) requires the plaintiff to plead fraud with particularity.

Although the plaintiff alleges several false statements of fact, there is no indication that she relied on any of those statements to her detriment.  For example, she alleges that an attorney from Kahn, Ltd. represented that he would accept a payment she offered, but later sought and obtained judgment despite her payment; that Smith promised to recertify her rent retroactively, but continued with the eviction; that the lease contained a promise not to evict Chambers except for cause and she was evicted without cause; that sections of the lease and HUD handbook are fraudulent, deceptive, and misleading; and that Smith violated the lease in seeking Chambers' eviction.

Some of these may be false statements.  However, it is not sufficient simply to show that false statements were made.  The plaintiff must rely on those statements to her detriment.  For

example, in <u>Long v. Shorebank Development Corp.</u>, the defendants'
misrepresentations caused the plaintiff to be lulled into
inaction and to desist in defending the eviction.  <u>See</u> <u>Long</u>, 182
F.3d at 552-53.  Here, by contrast, the plaintiff vigorously
contested the eviction.  For example, she presented to the
Illinois Appellate Court her defense that she had made payment
and that it had been accepted. <u>See infra</u> I.4. She also presented
her claim that Smith failed to recertify her rent to reflect a
change in her income. <u>See infra</u> note 5.[7]  Although she argues
that she relied on the defendants' statements, it is simply not
apparent from the complaint that she did so to her detriment.

Therefore, we dismiss this count for failure to state a
claim.


## VI.  **Defamation**

The defendants point out that the statute of limitations for
defamation claims is one year, 735 ILCS 5/13-201, and argue that
the plaintiff has failed to identify any defamatory statements
made within the one year limitations period.

The plaintiff again refers to the five year statute of
limitations found in 735 ILCS 5/13-205, but does not explain why
this catch-all provision applies rather than the provision

---

[7] These claims, as mentioned earlier, would also be barred by collateral
estoppel.

referring specifically to actions for defamation. We find that the more specific provision and a one-year limitation period applies. <u>See Johnson Controls, Inc. v. Exide Corp.</u>, -- F. Supp.2d -- , 2001 WL 844867 at *2 (N.D. Ill. July 25, 2001) (noting that the time accrues when the allegedly defamatory remark is published). The defamatory statement must have been made within one year of the filing of the lawsuit.

As to the defamatory statements, the plaintiff's affidavit states that defendants Smith and Mosley spread rumors about her "concerning this matter" and that her "credit report" has been damaged. The following elements are essential for a defamation claim under Illinois law: (1) a defamatory assertion of fact about the plaintiff; (2) publication; and (3) injury to the plaintiff's reputation. <u>Chisholm v. Foothill Capital Corp.</u>, 3 F.Supp.2d 925, 938 (N.D.Ill.1998). A plaintiff alleging defamation must recite the statement alleged to be defamatory. <u>Vantassell-Marin v. Nelson</u>, 741 F.Supp. 698, 707 (N.D.Ill.1990) (noting that dismissal is appropriate in the absence of such recitation). The exact wording of the defamatory remark is not required when the substance of the remark is alleged and the defendants are able to respond. <u>Id.</u> (finding that the substance of the remarks was sufficiently alleged).

Here, the plaintiff fails to state the substance of the defamation either with regard to the rumors or the damage to her

credit report.  Falsity is a required element of the plaintiff's defamation claim, <u>Troman v. Wood</u>, 340 N.E.2d 292, 299 (Ill. 1975), <u>Wynne v. Loyola Univ. of Chicago</u>, 741 N.E.2d 669, 675 (Ill. App. Ct. 2000), and the defendants should not be required to respond to the complaint without a clear allegation as to the particulars of the defamatory statements.

Therefore, we dismiss Count VI for failure to state a claim.

## VII.  <u>Other claims</u>

The second amended complaint refers to claims under 42 U.S.C. § 1985 and § 1986.  Although these are not asserted as separate claims distinct from those already discussed, for the sake of completeness we will address the viability of the plaintiff's potential claims under these statutes.

In general, § 1985 prohibits conspiracies to interfere with civil rights, and § 1986 creates a cause of action against individuals who negligently fail to prevent violations of § 1985.  A complaint alleging a violation of § 1985 "must allege a conspiracy motivated by a racial or other class-based animus." <u>Kyle v. Morton High School</u>, 144 F.3d 448, 457 (7th Cir.1998)).  A complaint fails to state a claim under § 1985 where it fails to allege "racially (or otherwise discriminatorily) motivated animus behind the defendants' actions." <u>Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.</u>, 184 F.3d 623, 632 (7th Cir. 1999).  Here, the

complaint is styled as a class-action, but to say that a group of individuals has been harmed is distinct from saying that the defendants' actions were motivated by animus against a particular class of individuals. The complaint does not allege any animus against a class on the basis of an invidious characteristic such as race or national origin. See Berry v. Illinois Dept. of Human Services, No. 00 C 5538, 2001 WL 111035 at *12 (N.D.Ill. Feb. 2, 2001) (dismissing § 1985 claim where the plaintiff failed to allege discrimination on the basis of race, gender, or national origin). We therefore find that the plaintiff has failed to state a claim under § 1985.

"There can be no cause of action under § 1986 absent a viable § 1985 claim." Perkins v. Silverstein, 939 F.2d 463, 472 (7th Cir. 1991). We find that the plaintiff has failed to state a claim under § 1986, as well.

## CONCLUSION

For the reasons stated above, we grant the defendants' motion to dismiss the plaintiff's second amended complaint. The plaintiff's motion to strike is denied as moot, inasmuch as we did not rely on the Rooker-Feldman doctrine to dismiss her due process claims for money damages. We grant the plaintiff's request for leave to file a third amended complaint, which she may do by October 20, 2001. This will be her final opportunity

to amend her complaint. The defendant may have thirty days after
service to plead to the third amended complaint.


DATE:        September 17, 2001

ENTER:

The Honorable John F. Grady