

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2095 | **DATE** | March 20, 2002 |
| **CASE TITLE** | Chambers v. The Habitat Co., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss the plaintiff's third amended complaint [  ] is granted.  The dismissal is with prejudice.  See attached for details.  ENTER MEMORANDUM OPINION.

(11) X [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAR 2 5 2002 | | 74 |
| X | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | |
| | Copy to _____ | | date mailed notice | | |
| KAM | courtroom deputy's initials | | KAM | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

U.S. DISTRICT COURT
CLERK
02 MAR 22 PM 1:53
FILED-ED TO

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| SANDRA ANN CHAMBERS, individually and on behalf of all others similarly situated in the past, present and future, )))))) | |
| Plaintiffs, )) | |
| v. )) | No. 99-C-2095 |
| THE HABITAT COMPANY, LONG GROVE HOUSE, DANIEL E. LEVIN, SANFORD KAHN, LTD., ALECIA SMITH, AND LYNN MOSELY, )))))) | |
| Defendants. )) | |

**DOCKETED**

MAR 2 5 2002

**MEMORANDUM OPINION**

Before the court are the defendants' motions to dismiss the plaintiff's third amended complaint. For the reasons explained below, the defendants' motion is granted.

**BACKGROUND**

The facts and procedural history of this case were discussed in detail in our earlier opinion. See Chambers v. The Habitat Co., No. 99 C 2095, 2001 WL 1104615, at *1 (N.D. Ill. Sept. 18, 20001). In sum, this lawsuit arises out of the eviction of plaintiff Sandra Ann Chambers from her residence in a public housing complex in Chicago. On September 18, 2001, we dismissed all the claims she asserted in her second amended complaint, and

we gave her one final opportunity to amend her complaint.

Her third amended complaint ("complaint") raises many of the
same claims raised previously, as well as some new claims.[1] Count
I alleges civil rights violations under § 1983; Count II alleges
violations of the Racketeer Influenced and Corrupt Organizations
Act (RICO); Count III alleges civil conspiracy under §§ 1985,
1986 and RICO; Count IV alleges consumer fraud and deceptive
business practices; Count V alleges common law fraud; Count VI
alleges abuse of process; Count VII alleges violations of the
Chicago Landlord and Tenant Ordinance; Count VIII alleges unjust
enrichment; Count IX alleges intentional infliction of emotional
distress; and Count X alleges harassment.

The defendants moved to dismiss all claims.

## ANALYSIS

When evaluating a motion to dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6), the court must accept as true all
factual allegations in the complaint and draw all reasonable
inferences in the plaintiff's favor. Hentosh v. Herman M. Finch
Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999);
Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997).

---

[1] The second amended complaint alleged violations of the plaintiff's
civil rights under 42 U.S.C. § 1983, violations of the Fair Debt Collection
Practices Act, fraud and false statements, defamation, harassment, malicious
prosecution, and conspiracy to interfere with civil rights under 42 U.S.C.
§ 1985, and a violation of 42 U.S.C. § 1986 for failing to prevent violations
of § 1985.

Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## I.    CLAIMS BASED ON FEDERAL LAW

### A.    Counts I and X: § 1983 Claims

In her second amended complaint, the plaintiff alleged that her due process rights were violated when the defendants evicted her from her apartment for failing to pay rent in April of 1995 and thereafter. One basis for her claim was that she was entitled to have her rent recertified (reduced) due to a decrease in her income in January of 1995. As a result of the defendants' failure to recertify her rent, she was unable to pay her full rent in April and May of 1995, the defendants initiated a forcible entry and detainer action against her, and she was ultimately evicted from her apartment in 1999. In our last opinion, we dismissed this portion of Chambers' civil rights claim as being barred by collateral estoppel because the Illinois Appellate Court discussed this claim in its opinion affirming the lower court's order for possession. See <u>Chambers</u>, 2001 WL 1104615, at *4.

Now, the plaintiff argues that while the Illinois Appellate Court opinion adjudicated the issue of possession after April of

1995, no state court has ruled on what amount of rent the plaintiff should have paid for the time period from January 1995 through March of 1995. Thus, Chambers claims once again that the defendant violated her due process rights by failing to recertify her rent. She further alleges that in October of 1995, defendant Kahn told her that if she would pay the attorney fees incurred in the eviction proceeding, he would "inform the property manager (Alecia Smith) at Long Grove House to recertify Chambers' rent." Third Am. Cmplt. at p. 8 (characterizing this as "extortion"). As evidence that she sought recertification, the plaintiff attaches as an exhibit to the complaint a July 1995 letter from defendant Smith in which Smith apologizes for a delay in recertifying the plaintiff's rent.

The main problem with this claim is that it is time-barred.[2] The statute of limitations for filing a Section 1983 claim in Illinois is two years. Northen v. City of Chicago, 126 F.3d 1024, 1026 (7th Cir. 1997). The plaintiff was allegedly deprived of her property in January, February, and March of 1995 when she

---

[2] Moreover, the question of whether the plaintiff was entitled to have her rent recertified in 1995 was already adjudicated by the Illinois Appellate Court. See The Habitat Co. v. Chambers, No. 1-97-2330 (Ill. App. Ct. Aug. 4, 1998) ("order"), at 9-10. The court discussed Chambers' claim that she requested a recertification of her rent from May 1995 through October of 1995, and specifically noted that Smith, in her July letter, asked Chambers to provide documentation of her change in income. The court concluded that the reason her rent was not recertified was because Chambers failed to provide the necessary documents to prove her decrease in income. Although the court expressly dealt with the issue of recertification for the period May through October of 1995, the claim for retroactive recertification for January through March is simply a different way of stating the same claim that Chambers was entitled to recertification in May of 1995.

overpaid her rent. The alleged civil rights violations – the defendants' failure to act upon plaintiff's request for recertification and defendant Kahn's alleged "extortion" – also took place in 1995.[3] The plaintiff argues that the injury was not complete until the order for possession was enforced against her in 1999. We disagree. Ultimate eviction for nonpayment of rent in April of 1995 (and thereafter) has nothing to do with a monetary injury allegedly sustained in January, February, and March of 1995 for overpayment of rent. Because the plaintiff did not file this complaint until March of 1999, we find this claim is time-barred. Count I is dismissed.

Similarly, the plaintiff's § 1983 claim for "harassment" (Count X) is also time-barred. The plaintiff argues that she states a claim for harassment under § 1983 if the alleged harassment was "carried out in order to induce [her] to give up a substantive constitutional right or to deprive [her] of a constitutional right." Mullinax v. McElhenney, 672 F. Supp. 1449, 1452 (N.D. Ga. 1987). However, there are no allegations that the defendants did anything after 1995 that had anything to do with the recertification of her rent. The only post-1995 conduct she complains of is that the defendants enforced the order of possession in 1999 and sent her rent bills that included

---

[3] Although the plaintiff alleges that the defendants sent her bills reflecting illegal attorney fee charges from 1996 through 1999, nowhere does she allege that the defendants conditioned retroactive recertification on payment of these bills.

allegedly illegal attorney fees charges from 1996 through 1999.
Neither of these is related to the alleged due process violation:
the failure to recertify her rent retroactively to January,
February, and March of 1995. Therefore, Count X is dismissed as
time-barred.

### B.  **RICO Violations**

The plaintiff alleges that the defendants engaged in all the
"prohibited activities" enumerated in § 1962 of RICO. See 18
U.S.C. § 1692(a), (b), (c), and (d). All of the RICO claims
require allegations that the defendants engaged (or conspired to
engage in) two or more predicate acts of racketeering. We find
that the plaintiff has failed to state a claim because she has
alleged, at most, one predicate act of racketeering. See Mira v.
Nuclear Measurements Corp., 107 F.3d 466, 473 (7th Cir. 1997) ("A
pattern of racketeering activity consists of at least two
predicate acts of racketerring commited within a ten-year
period.").

The plaintiff argues that the defendants committed forty
predicate acts including: (1) failing to recertify her rent
retroactively for the period January, February, and March of
1995; (2) executing the judgment for possession of her apartment;
(3) Kahn telling the plaintiff that if she paid his attorney fees
he would "inform" defendant Smith to recertify Chambers' rent,

(4) sending Chambers numerous bills that included attorney fee charges from 1996 through 1999, which fees were illegal under a 1976 injunction entered against the defendants in a separate case. The plaintiff characterizes these acts as mail fraud and extortion.

As an initial matter, we note that the plaintiff's argument that she was entitled to have her rent recertified was already addressed and rejected by the Illinois Appellate Court. See infra note 2. The Illinois Appellate Court also affirmed the order for possession of her apartment, and she is not entitled to relitigate either of these claims. The following sections will discuss Chambers' allegations that the defendants illegally assessed attorney fees against her.

### 1.    Mail Fraud

According to Chambers, defendants are prohibited from assessing any attorney fees in eviction proceedings. The plaintiff argues that the defendants committed numerous acts of mail fraud by using the mails to send her bills reflecting prohibited attorney fee charges. The elements of mail fraud in a RICO claim are: "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." Emery v. American Gen. Fin., Inc., 71 F.3d

1343, 1349 (7th Cir. 1998).

Chambers does not allege that the bills reflected attorney fees that were not actually incurred, or that the attorney fee charges were disguised in some sneaky manner. The plaintiff attaches as exhibits to the complaint copies of the bills she was sent, which include charges clearly identified as "Legal Collections." The fraud Chambers alleges is simply that the defendants had no right to charge her for any of their attorney fees.[4] However, absent any allegations that the defendants made any factual misrepresentations, sneaky omissions, or engaged in any deceitful or underhanded acts, we do not believe that the defendants' alleged conduct rises to the level of fraud. See Smith v. Grundy County Nat'l Bank, 635 F. Supp. 1071, 1076 (N.D. Ill. 1986) (dismissing RICO claim based on mail fraud where the plaintiff alleged that the defendant bank had no right to charge the interest rate it openly disclosed but did not allege any deceitful acts). Where disputed charges are openly identified and disclosed in a mailing, the mailing can hardly be said to "further" any alleged scheme to defraud. See id. at 1078.

Moreover, the plaintiff has not pled facts supporting her assertion that the fees were illegal. Chambers argues that the defendants were enjoined from charging attorney fees against

---

[4] At least some of the attorney fees ($1,000) assessed against Chambers were ordered by the Circuit Court of Cook County as sanctions. See The Habitat Co. v. Chambers, No. 1-97-2330 (Ill. App. Ct. Aug. 4, 1998), at 16-18 (affirming the sanctions against Chambers).

residents of the Long Grove House in a 1976 case, <u>Town and Garden</u>
<u>Tenant Council v. The Habitat Company</u>, 76 CH 1449 (March 7,
1978).[5] The order entered in that case enjoined the Habitat
Company "from assessing attorneys' fees against members of the
plaintiff class[6] who tender or pay rent after the date said rent
is due or after the prosecution of a forcible entry and detainer
action." However, Chambers has pled no facts suggesting that she
paid past-due rent after the forcible entry and detainer action
was prosecuted. To the contrary, her March 1999 rent bill
(attached to her complaint) shows an unpaid balance of
$17,178.43, and the attorney fee charges from all of her bills
only partially account for this balance. This tends to suggest
that the plaintiff had not paid her past-due rent,[7] and leaves us
no basis for inferring that the defendants violated the
injunction.

The plaintiff also claims that the Chicago Landlord & Tenant
Ordinance prohibits landlords from assessing attorney fees
against tenants in eviction cases. The provisions that she refers

---

[5] It is unclear in what court the order was entered, as the photocopy
plaintiff provided is cut-off at the top. The order was signed by Judge Nathan
M. Cohen.

[6] The class was defined as "all present and future tenants who reside or
will reside in Town and Garden Apartments or Long Grove House, and who have
been or may be in the future assessed the challenged extra charges for late
rent payment."

[7] Assuming that the attorney fee charges on Chambers' rent bills are not
cumulative (i.e. they do not include prior unpaid balances) and we add all the
fees together, the sum does not account for the balance owed of $17,178.43.
The remaining amount is more than three months of rent.

to contain no such prohibitions, but instead (1) regulate what terms may be included in the lease, <u>see</u> City of Chicago Municipal Code, par. 5-12-140 (1991), or (2) allow attorney fees "in accordance with applicable law or as expressly provided in this ordinance," <u>id.</u> at par. 5-12-180. <u>See infra</u> II.C. Finally, Chambers states in her complaint that Illinois law prohibits assessment of attorney fees against Chicago tenants either before, during, or after an eviction proceeding. However, she does not identify any statutory provision that includes such a prohibition.

The plaintiff has failed to plead any facts supporting her assertion that the defendants committed mail fraud.

### 2. **Extortion**

The plaintiff also claims that the illegal assessment of attorney fees to her constituted extortion. The federal criminal code defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2); <u>Sutherland v. O'Malley</u>, 882 F.2d 1196, 1202 (7th Cir. 1989) (quoting this definition in a case alleging civil RICO violations). The defendants point out that the complaint does not allege that they ever "obtain[ed]" the attorney fees, and the plaintiff does not dispute the defendants' claim that she never paid those fees. Instead, Chambers argues

that the defendants <u>attempted</u> to extort the attorney fees.

This "attempted extortion," however, did not involve the use of threats of force or violence. Chambers argues that she "plead [sic] matters under official right, force and fear regarding the predicate acts." Response, at 9. She contends that she felt forced to file for bankruptcy because she feared "that the Defendants may proceed with other improper legal proceedings to extort even more money from her." <u>Id.</u> She does not allege that the defendants threatened to initiate any legal proceedings against her or that they even threatened to send the bills into collection. Although she states that she acted out of fear in filing for bankruptcy, she does not explain how her fear of a collection action was reasonable. According to the complaint, the bills were pending for at least three years without any such action or threat of such action. <u>See</u> <u>Sutherland</u>, 882 F.2d at 1202 (stating that the plaintiff's fear must be reasonable). The plaintiff does not even attempt to support her assertion that the defendants acted "under [color of] official right."

The closest thing to a threat we can discern from the complaint is defendant Kahn's alleged statement in October of 1995 that if Chambers paid his attorney's fee, he would "inform" defendant Smith to recertify Chambers' rent. Even this probably falls short of extortion: according to the complaint, Kahn did not threaten to withhold recertification unless Chambers paid his

fees. Regardless of whether this single act could be characterized as extortion, it certainly is not sufficient to constitute a pattern of racketeering activity. See infra note 3; Mira, 107 F.3d at 473 (stating that a pattern of racketeering activity consists of at least two predicate acts of racketeering).

The plaintiff has failed to plead the elements of a RICO violation. Therefore, we dismiss Count II and that portion of Count III alleging a RICO conspiracy.

### C. **Count III: Conspiracy**

Citing 42 U.S.C. §§ 1985 and 1986, the plaintiff alleges a "conspiracy to extort money from tenants (either by attorney's fees, [or] over-payment of rent)." Third Am. Cmplt. at 14. We dismissed these claims in our last opinion because the plaintiff failed to allege any class-based discrimination. She failed to correct the problem in her third amended complaint.

In her Response brief, Chambers argues that her claim is not based on federal law but on Illinois common law, and as such, she does not have to show discrimination. Under Illinois law, the elements of civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) an overt act done pursuant to and in furtherance of the common

scheme. <u>Vance v. Chandler</u>, 597 N.E.2d 233, 236 (Ill. App. Ct. 1992).

As explained above, the plaintiff has failed to allege facts supporting her claim that the defendants acted unlawfully in charging her for the attorney fees they incurred. <u>See infra</u> II. We decline to revisit the question of whether Chambers was entitled to retroactive rent recertification. <u>See infra</u> note 2.

Count III is dismissed.


## II.  CLAIMS BASED ON STATE LAW

Having dismissed all of Chambers' federal claims, we may decline to exercise jurisdiction over her state law claims. 28 U.S.C. § 1367(c)(3). Nevertheless, we will retain jurisdiction over the state law claims in the interest of judicial economy.

### A.   Counts IV and V: Consumer Fraud and Common Law Fraud

To establish fraud under Illinois law, the plaintiff must show that (1) the defendant made a false statement, (2) of material fact, (3) which the defendant knew or believed to be false, (4) with the intent to induce the plaintiff to act; (5) the plaintiff justifiably relied on the statement, and (6) the plaintiff suffered damage from such reliance. <u>Houben v. Telular Corp.</u>, 231 F.3d 1066, 1074 (7th Cir. 2000). Here, the plaintiff does not allege that the attorney fee bills contained any false or misleading statements; she simply claims that the defendants

had no right to charge her those attorney fees. As noted above, her allegations are insufficient to rise to the level of fraud. See infra I.B.1; Butitta v. First Mortgage Corp., 578 N.E.2d 116, 121 (Ill. App. Ct. 1991) (holding that the plaintiffs failed to allege a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act in part because they failed to allege any misrepresentation on the part of the defendant or facts indicating that the disputed fees were illegal).

Therefore, we dismiss the plaintiff's fraud claims in counts IV and V.

### B.  Count VI: Abuse of Process

Count VI alleges abuse of process. Under Illinois law, the elements for a claim of abuse of process are:

(1) existence of an ulterior motive or purpose, and

(2) some act in the use of legal process not proper in the regular prosecution of the proceedings.

Commerce Bank, N.A. v. Plotkin, 627 N.E.2d 746, 748 (Ill. App. Ct. 1994). Illinois courts have given "process" a literal meaning, stating that "[p]rocess is issued by the court, under its official seal and must be distinguished from pleadings, which are created and filed by the litigants." See id. (quoting from Doyle v. Shlensky, 458 N.E.2d 1120, 1128 (Ill. App. Ct. 1983)). Filing a lawsuit, even with a malicious motive, does not constitute abuse of process. Id.

The complaint contains only a bare allegation of "abuse of process" in a count that simply refers back to the allegations stated in prior counts. It is not at all specific as to what acts of the defendants constituted abuse of process. In her Response, Chambers suggests that her claim is based on the defendants' ulterior purpose to "extort" attorney fees from her. However, "[i]t is the settled law of Illinois that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process." Holiday Magic, Inc. v. Scott, 282 N.E.2d 452, 456 (Ill. App. Ct. 1972). The only "process" alleged was the Cook County Circuit Court's order for possession, but we cannot discern from the complaint how this order was misused. See Doyle, 458 N.E.2d at 1128 ("The test for sufficiency of the allegations pertaining to the second element is whether process has been used to accomplish some result which is beyond the purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally be compelled to do.").

Therefore, Count VI is dismissed for failure to state a claim.

## C.   Count VII: Violations of the Chicago Landlord and Tenant Ordinance

The plaintiff argues that the defendants violated two provisions of the Chicago Landlord and Tenant Ordinance,

paragraphs 5-12-140 and 5-12-180. Chambers quotes from portions

of paragraph 5-12-140, which provides as follows:

> Except as otherwise specifically provided by this
> chapter, no rental agreement may provide that the
> landlord or tenant:
>
> f.   Agrees that in the event of a lawsuit arising out of
>      the tenancy the tenant will pay the landlord's
>      attorney's fees except as provided for by court rules,
>      statute, or ordinance.
>
> . . .
>
> h.   Agrees that a tenant shall pay a charge, fee or penalty
>      in excess of $10.00 per month for the first $500.00 in
>      monthly rent plus five percent per month for any amount
>      in excess of $500.00 in monthly rent for the late
>      payment of rent.
>
> . . .
>
> A provision prohibited by this section included in a
> rental agreement is unenforceable. The tenant may
> recover actual damages sustained by the tenant because
> of the enforcement of a prohibited provision.

City of Chicago Municipal Code, par. 5-12-140 (1991).

This part of the Ordinance prohibits landlords from

including certain provisions in their leases and subsequently

enforcing the prohibited provisions. The defendants point out,

and Chambers does not dispute, that her lease did not include a

provision regarding the payment of attorney fees. Moreover,

Chambers does not allege that her lease included a prohibited

provision about the assessment of late fees or even that any late

fees were assessed against her in violation of the Ordinance.

Therefore, the claim based on paragraph 5-12-140 is without

merit.

The plaintiff also argues that the defendants violated

paragraph 5-12-180, which provides:

> Except in cases of forcible entry and detainer actions,
> the prevailing plaintiff in any action arising out of a
> landlord's or tenant's application of the rights or
> remedies made available in this ordinance shall be
> entitled to all court costs and reasonable attorney's
> fees; provided, however, that nothing herein shall be
> deemed or interpreted as precluding the awarding of
> attorney's fees in forcible entry and detainer actions
> in accordance with applicable law or as expressly
> provided in this ordinance.

City of Chicago Municipal Code, par. 5-12-180 (1991). Contrary to
the plaintiff's assertion, this provision does not state that
attorney fees are unavailable to prevailing plaintiffs in
forcible entry and detainer actions. Moreover, we agree with the
defendants that this provision does not afford the basis for a
cause of action against them as it does not prohibit the
defendants from doing anything.

Count VII is dismissed.

### D.    Count VIII: Unjust Enrichment

Unjust enrichment refers to situations where the "defendant
voluntarily accept[s] a benefit which would be inequitable for
him to retain without payment." People ex rel. Hartigan v. E & E
Hauling, Inc., 607 N.E.2d 165, 177 (Ill. 1992). The complaint
contains only a bare allegation of "unfair enrichment" in a count
that simply refers back to the allegations stated in prior
counts. It does not state how the defendants were unfairly

enriched. In her Response, the plaintiff argues that the permanent injunction entered against the defendants in 1976 prohibits them from collecting attorney fees. That may be, but there are no allegations in the complaint that the plaintiff ever paid the attorney fees.

Therefore, we dismiss Count VIII for failure to state a claim.

### E.    Count IX: Intentional Infliction of Emotional Distress

Finally, the plaintiff alleges intentional infliction of emotional distress. The elements of this claim under Illinois law are:  (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended that his conduct should inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress, and (3) the defendant's conduct in fact caused severe emotional distress. <u>Rekosh v. Parks</u>, 735 N.E.2d 765, 772 (Ill. App. Ct. 2000).

> [L]iability [for intentional infliction of emotional distress] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or trivialities. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency ...." Restatement (Second) of Torts sec. 46, comment D (1965).

<u>Public Finance Corp. v. Davis</u>, 360 N.E.2d 765, 767 (Ill. 1977). The plaintiff's allegations do not meet these exacting standards. The failure to recertify Chambers' rent retroactively, the alleged "extortion" attempt made by defendant Kahn, and the sending of numerous bills that included attorney fee charges are more properly characterized as "petty oppressions," "annoyances," or "threats" rather than outrageous conduct.

We dismiss Count IX for failure to state a claim.

### CONCLUSION

For the reasons explained above, we dismiss the third amended complaint. Because plaintiff has had more than sufficient opportunity to plead a case, the dismissal is with prejudice.

DATE:     March 20, 2002

ENTER:    _____
          The Honorable John F. Grady